**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **MICHAEL D. WILKINS,**           ) | |
|                                                         ) | |
|         **Plaintiff**           ) | |
|                                                         ) | |
| v.                                                   ) | Civil Action No. 3:01CV795 |
|                                                         ) | |
| **J. LAWRENCE CLARY, et al.,**    ) | |
|                                                         ) | |
|         **Defendants.**        ) | |

**<u>MEMORANDUM OPINION</u>**

     This matter is before the court on a joint motion for summary judgment on behalf of the Defendants J. Lawrence Clary, Danny Fox, Pete Kuehl, and Nancy M. Thorne (Mecklenberg Defendants), who are the only remaining defendants following the court's grant of summary judgment in favor of the Defendant George Austin.  (Order, July 5, 2005).  Having reviewed all relevant pleadings and entertained oral argument on the related motion by Austin that involved the same issues, the court does not believe further argument would be of any assistance.  The court concludes that the motion for summary judgment by the Mecklenberg Defendants must also be GRANTED.

     The relevant procedural history and summary of undisputed facts, including reasonable inferences, together with the required standard of review, are set forth in the court's earlier Memorandum Opinion that was issued in regard to Austin's motion for summary judgment.

(Mem. Op., July 5, 2005).[1] Additional undisputed facts and reasonable inferences that are relevant to the resolution of the pending motion are as follows:

1. Although each of the Mecklenberg Defendants were involved in the state law enforcement investigation or the state prosecution of the Plaintiff, the officers' involvement ranged from more active participation in the interviewing and monitoring of witnesses (Fox and Kuehl) to a supervisory role without active involvement (Clary) and a prosecutorial role in regard to state charges that were dismissed (*nolle prossed*) before any trial proceedings (Thorne). (Defs.' Br. Supp. Mot. Summ. J. (Defs.' Mem.) at 1-3).

2. None of the Mecklenberg Defendants testified before the federal grand jury that returned the charges against the Plaintiff. (Pl.'s Mem. in Opp'n to Mot. Summ. J. by Mecklenberg Defs. (Pl.'s Mem.) at 5; Defs.' Mem. at 6).

3. All payments to cooperating witnesses, including those who supplied evidence against the Plaintiff, both through their statements and trial testimony, were duly recorded according to standard agency procedure and pursuant to written agreements that conditioned the payments on full compliance with the law. (Pl.'s Mem. at 5-6; Def.'s Mem. at 7; attached Millner dep. tr. at 53; attached Gauldin dep. ex.; attached Tisdale dep. ex.; attached Green dep. ex.).

4. There is no evidence of any non-economic benefit to any witness for the purpose of inducing false testimony such as reduction of charges or prosecutorial decisions not to seek more severe punishment than would be otherwise expected. (Pl.'s Mem. at 6-8).[2]

## Analysis

The Mecklenberg Defendants seek dispositive relief because Wilkins' claims of (1) illegal arrest and prosecution on less than probable cause; and (2) illegal payments made to

---

[1] The facts, procedural history, and applicable standard of review are incorporated herein by reference.

[2] With leave of court, Plaintiff deposed four witnesses but was unable to elicit any evidence in support of the claim as to any non-economic benefit to any cooperating witness. Plaintiff seeks an additional opportunity to explore all issues, but without any proffered basis to believe such evidence is now available other than Plaintiff's own convictions, despite the fact that he confessed to many of the allegations that he now claims are based on false evidence. *See* discussion, *infra*.

cooperating witnesses in order to obtain false evidence, cannot be sustained as a matter of law. (Defs.' Mem. at 1, 5-8). Wilkins responds that he has sufficiently asserted and supported his allegations that he was charged and prosecuted on the basis of evidence that was known by the Defendants to be false and that witnesses were paid with the objective of obtaining such false evidence, thus creating a fact question sufficient to overcome Defendants' defense of qualified immunity in order to survive summary judgment. (Pl.'s Mem.). In the alternative, Wilkins argues that he has been denied an adequate opportunity for further discovery in order to be able to sustain his claims:

> Wilkins must be able to conduct additional discovery of facts which tend to show that the witness statements were false and given through the cooperation of the Defendants. Further, he must be able to develop evidence to determine the participation of the Defendants in providing compensation, *e.g.*, Thorne and Clary, as well as what involvement the Mecklenberg Defendants had with regard to the federal prosecution.

(Pl.'s Mem. at 11-12).

Wilkins implicitly, if not explicitly, acknowledges that he doesn't possess evidence to support his claim; rather, he wants to explore the possibility that he can find some. In federal civil litigation, liberal discovery of information that may lead to relevant evidence is a party's right. Hickman v. Taylor, 329 U.S. 495, 506-507 (1947). In a case where qualified immunity is pled, the general discovery rules are suspended unless the court determines that discovery is needed to determine whether the defendants acted in contravention of clearly established law. DiMeglio v. Haines, 45 F.3d 790, 795 (4th Cir. 1995). Wilkins has been permitted to obtain discovery, including all grand jury transcripts. His only bases for arguing that evidence may exist that the Mecklenburg Defendants violated clearly established law is his strong, personal belief

and the fact that some witnesses were paid sums of money that the Defendants assert were for authorized (and documented) expenses consistent with standard procedure and state law. A strong personal belief and the established fact that a few of the witnesses were reimbursed for expenses does not provide a reasonable basis to proceed to discovery when all the available discovery to date demonstrates that the Defendants did not violate a clearly established right of the Plaintiff. Jenkins v. Medford, 119 F.3d 1156, 1174 (relying on Harlow v. Fitzgerald, 457 U.S. 800 (1982), for the proposition that public officials should not be burdened with broad discovery when the allegation does not demonstrate a violation of clearly established law). The existing discovery demonstrates the weakness of Wilkins position which is further demonstrated by the fact that none of the Mecklenberg Defendants testified before the federal grand jury that returned the charges on which he was ultimately tried and the fact that Wilkins admitted to many of the allegations of drug dealing when he was interviewed by law enforcement. (*See, e.g.*, Def. Austin's Mot. to Dismiss, ex. A-2); DiMeglio, 45 F.3d at 795 (holding that only a material dispute over the facts will allow a claim to survive and discovery to take place).

Qualified immunity is an "*immunity from suit* rather than a mere defense to liability" and "even such pretrial matters as discovery are to be avoided is possible." Mitchell v. Forsyth, 472 U.S. 511 (1985) (emphasis in original). Here, in the initial stages of this litigation, the court denied Austin's motion to dismiss, in part to permit a reasonable opportunity for discovery. (Mem. Op., June 10, 2002). Accordingly, Wilkins has had access to investigative files, the evidence presented to the state multi-jurisdictional grand jury, the evidence presented at his own trial, and this court permitted the taking of the depositions of the four witnesses (Tisdale, Green, Gauldin, and Millner) who, if anyone, would be most likely to provide the necessary evidence

that they were told to falsify evidence or otherwise did so with the contemporaneous knowledge of any of the Defendants.[3] All such efforts have failed. While Hickman v. Taylor abolished the popular plea to prevent discovery as a fishing expedition, it did not transform the process into one, continuous fishing tournament. Wilkins has had a full and fair opportunity to find support at least sufficient for his claims to overcome summary judgment and, having failed to do so, the Defendants are entitled to the protection of the defense of qualified immunity at this juncture.

Qualified immunity protects defendants from liability when they exercise reasonable judgment in their official capacity. Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992). The investigation here spanned an extended period of time. It was not an overnight, hasty, affair more likely to foster error, if not misconduct. Numerous witnesses, both those of the ilk who had reason to fabricate stories and those who did not, were interviewed multiple times. All of the witnesses' basic versions of the events leading to Wilkins' indictment and trial were corroborated by each other and independent evidence, most notably, Wilkins' own admissions. There is no evidence, as more fully discussed in the court's earlier Memorandum Opinion, that any of the Defendants knowingly presented or suborned the presentation of false evidence, or that the payment of standard witness fees, sanctioned by law, were paid for the purpose of obtaining false evidence. Whether the determination of probable cause by successive grand juries automatically shields any or all of the Defendants from potential liability, or even if the Plaintiff would have a

---

[3] Aside from the question of whether a public official should be subject to the discovery process, including deposition, is it realistic to expect that any of these defendants would confess to fabricating the evidence or even providing materially inconsistent versions relevant to having done so? For example, a material dispute does not exist if it is not realistic to expect that anyone would admit that he paid relatively nominal amounts of money ($780±) to a witness in order to suborn perjury and then documented the payments. DiMeglio, 45 F.3d at 795.

clearly established constitutional right to not be arrested or prosecuted on the basis of insufficient, but not knowingly false evidence, these Defendants acted reasonably in the investigation and prosecution of Wilkins.

For the reasons set forth herein and in the court's earlier Memorandum Opinion of July 5, 2005, the Mecklenberg Defendants' joint motion for summary judgment must be granted and the case dismissed.

An appropriate Order shall issue.

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Dated:_____